USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _03/06/2023_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
JAMES OWENS, et al.,                                    :
                                                        :
                              Plaintiffs,               :
                                                        :
            -against-                                   :
                                                        :          22-CV-1949 (VEC)
                                                        :
TALIBAN a/k/a ISLAMIC EMIRATE OF                        :          OPINION AND ORDER
AFGHANISTAN,                                            :
                                                        :
                              Defendant.                :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Surviving victims, estates of victims who did not survive, and family members of the

victims of al-Qaeda's 1998 terrorist attacks on U.S. embassies in Kenya and Tanzania

("Plaintiffs") moved to confirm the Court's order preliminarily attaching funds held by

Afghanistan's central bank at the Federal Reserve Bank of New York (the "Funds") to preserve

their chance of collecting on a future judgment against the Taliban.  The Court denied Plaintiffs'

motion (the "Attachment Decision") on the grounds that the Funds are immune from attachment

under Section 1611 of the Foreign Sovereign Immunities Act (the "FSIA").  *See* Attachment

Decision, Dkt. 82.  Plaintiffs have now moved to stay the Attachment Decision pending appeal.

*See* Not. of Mot., Dkt. 83.  For the following reasons, Plaintiffs' motion is DENIED.

## DISCUSSION[1]

Courts consider four factors when assessing whether to grant a stay pending review on

appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on

the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

---

[1]      The Court assumes familiarity with the facts as set forth in the Attachment Decision.  *See* Attachment
Decision, Dkt. 82.

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are "the most critical." *Id.* at 434–35 (noting that more than a mere "possibility" of relief or irreparable injury is required) (internal quotation marks and citation omitted). Likely success on the merits can be established if there are "serious questions going to the merits of the dispute and the applicant is able to establish that the balance of hardships tips *decidedly* in its favor." *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014) (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)). A stay is "not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks and citation omitted). The degree to which a factor must be present "varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (cleaned up and citation omitted).

I.     **Plaintiffs Have Not Established Likely Success on the Merits**

Plaintiffs have not met their burden of showing likely success on the merits because they have failed to identify "serious questions" regarding the merits of this case. Without rehashing the entirety of the Attachment Decision, the Court briefly explains why Plaintiffs have not met their burden.

Plaintiffs take issue with the Court's issuance of a decision shortly after the Government submitted a statement of interest. *See* Pls. Mem., Dkt. 84, at 9. Plaintiffs fail to acknowledge, however, that they had, in their briefing in support of confirmation, anticipated the Government's argument and had explained why they believe the Government's position (as articulated in

2

parallel proceedings involving victims of the September 11, 2001 terrorist attacks) is legally and factually incorrect.  *See* Pls. Reply, Dkt. 63, at 4–5.  Plaintiffs were, therefore, far from blindsided by the Court's decision or the Government's position.  If Plaintiffs wanted an opportunity to respond to the Government's position, they had three weeks to request permission for supplemental briefing between the time the Court invited the Government to submit a statement of interest and the Court's decision.  *See* Order, Dkt. 80 (inviting the Government to submit a statement of interest within three weeks); *see also Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013) (summary order) (finding no error in the district court's decision not to allow supplemental briefing in part because the appellant had "ample notice" of the relevant issue).

Plaintiffs also assert that the Court erred by assessing the application of the FSIA *sua sponte* because ownership of the Funds is disputed, *see* Pls. Mem. at 9–12, but this argument misconstrues the Court's decision.  District courts may *sua sponte* enforce an immunity defense to execution when the action involves an "undisputed" foreign sovereign.  *Walters v. Indust. & Comm. Bank of China, Ltd.*, 651 F.3d 280, 293–94 (2d Cir. 2011).  Plaintiffs fail to address the crucial point that funds held "in an account in the name of a central bank or monetary authority" are "presumed to be immune from attachment" under the FSIA.  Attachment Decision at 8 (quoting *NML Capital, Ltd. v. Banco Cent. de la Republica Arg.*, 652 F.3d 172, 197 (2d Cir. 2011)).  Those are precisely the circumstances in this case: the Funds are in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), and are, therefore, presumptively immune from attachment.[2]

---

[2]     Plaintiffs attempt to walk back their concession that the Court could consider the application of the FSIA at this juncture by maintaining that such a threshold determination would only be appropriate if the Court subsequently concluded that immunity does not apply.  Pls. Mem. at 12.  But Plaintiffs identify no authority for the astonishing

Plaintiffs' only avenue to overcome the FSIA's execution immunity is, therefore, to rebut the presumption by establishing that the Funds are not being used for DAB's "own account" under Section 1611 of the FSIA. *See* 28 U.S.C. § 1611(b). Apart from repeating past arguments, Plaintiffs assert that the Court did not explain how an institution that the Taliban controls could retain its sovereign status. Pls. Mem. at 13. But evidence that the Taliban has seized control of DAB's operations is not the same as evidence that DAB's assets are now the assets of the Taliban. Accepting Plaintiffs' argument would effectively mean that the power of the United States Courts would be used to pay the Taliban's debts with assets of the Afghan people that the Taliban has stolen. *See In Re: Terrorist Attacks on Sept. 11*, No. 03-MD-01570 (GBD) (SN), 2023 WL 2138691, at \*14 (S.D.N.Y. Feb. 21, 2023) (concluding that "neither the Taliban nor the [creditors] are entitled to raid the coffers of the state of Afghanistan to pay the Taliban's debts").

As for Plaintiffs' argument that the Court improperly deferred to the Executive Branch in determining DAB's status, *see* Pls. Mem. at 15–18, Plaintiffs confuse the nature of the Court's deference. Although it is of course up to the Judicial Branch to assess whether the FSIA applies, the FSIA does not address the extent to which a nation or its central bank is sovereign. That threshold determination is soundly within the purview of the Executive Branch. *See Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 19 (2015); *Baker v. Carr*, 369 U.S. 186, 212 (1962).[3]

---

theory that a Court's power to consider the applicability of the FSIA hinges on the extent to which it is prepared to side with putative judgment creditors.

[3]      Although the Second Circuit will ultimately decide whether it has jurisdiction to hear Plaintiffs' appeal, the Court notes that, ordinarily, "an order confirming or refusing to confirm an attachment is in no way final" and, therefore, not appealable. *Dayco Corp. v. Foreign Trans. Corp.*, 705 F.2d 38–41 (2d Cir. 1983); *see also NML Capital, Ltd. v. Banco Ctrl. De la republica Arg.*, 652 F.3d 172, 184 (2d Cir. 2011) (accepting jurisdiction to determine whether funds are immune from attachment under Section 1611 of the FSIA because the district court had properly certified its decision for interlocutory appeal). This uncertainty, though not dispositive, further weighs against granting Plaintiffs' request for a stay. *See In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at \*3 (S.D.N.Y. Aug. 27, 2014) (noting that "questions regarding the appealability" of the Court's order weighed against granting a stay).

## II.     Plaintiffs Have Not Established That They Will Suffer Irreparable Injury Absent a Stay

Plaintiffs have also failed to show that denying their request for a stay will result in irreparable injury.

Plaintiffs emphasize that DAB's Funds are limited and that the Executive Branch may decide to unfreeze or otherwise dispose of the Funds before Plaintiffs seize what they believe to be their fair share. *See* Pls. Mem. at 18–21. But those circumstances are unlikely and, in all events, do not change the fact that, to achieve turnover of the Funds, Plaintiffs would have to establish that the Funds in fact belong to the Taliban, its agent, or its instrumentality under the Terrorism Risk Insurance Act. *See* Attachment Decision at 3 n.2, 10 n.10. So far, Plaintiffs have not suggested that they have such proof. To the contrary, their position seems to be that the Taliban will steal the funds from the Afghan people if the Government allows them to do so and, therefore, Plaintiffs should be able to seize the funds to satisfy the Taliban's debt. One remote possibility after another does not add up to proof that Plaintiffs will suffer irreparable injury absent a stay.

The Court is deeply sympathetic to Plaintiffs' efforts to recover damages for the horrific acts of terrorism at issue in this case. It is not prepared, however, to grant Plaintiffs' request at the expense of a sovereign that was not implicated in the attacks.

## III.    Remaining Factors Do Not Justify a Stay

Granting Plaintiffs' request for a stay would risk injuring the other interested parties in this action and would not serve the public interest. A stay would undermine the Court's denial of Plaintiffs' confirmation request and would run counter to strong national interests in respecting the sovereignty of other countries' central banks. *See* Order, *In Re: Terrorist Attacks on September 11, 2001*, No. 03-MD-01570, Dkt. 8876, at 4–5 (S.D.N.Y. Feb. 24, 2023).

### CONCLUSION

For all of those reasons, Plaintiffs' request to stay the Court's decision denying confirmation of its pre-judgment attachment order is DENIED.

The Clerk of Court is respectfully directed to close the open motion at Docket Entry 83.

**SO ORDERED.**

**Date:  March 6, 2023**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**

6